ELLIS, Judge.
This is an intrusion in office suit, brought by the District Attorney of the 20th Judicial District under the provisions of R.S. 42:76(1). The operative facts of the case are set forth in our opinion rendered when this case was before us on an exception of no cause of action. See State ex Rel. Kilbourne v. Dugas, 180 So.2d 440 (La.App.1965).
Subsequent to the above decision, trial was had on the merits of the case in the lower court, and the suit once again was dismissed. From the latter judgment, relator has prosecuted this appeal.
Although a number of procedural objections were raised by the appeal, all of these were waived by relator in argument before this Court, and only one question remains to be determined: that is, should the inmates of East Louisiana State Hospital be included in the population in determining to how many Police Jurors Ward Three of East Feliciana Parish is entitled. If the population of the Ward is in excess of 7500, it is entitled to three Police Jurors, if between 5000 and 7500, it is entitled to two Police Jurors, and if under 5000, it is entitled to one. R.S. 33:1223.
As pointed out in our former opinion in this case, there are presently three Police Jurors holding office from that ward: Jacob De Lee, Henry Fluker, and Robert P. Dugas. Of these, Mr. Dugas received the fewest number of votes in the March 3, 1964, General Election, and it is he who is alleged to he intruding into and unlawfully holding office.
When this suit was filed, the 1960 United States Census showed there to be 5092 inhabitants residing in Ward Three of East Feliciana Parish. Subsequently, after this case was tried and submitted, there was some correspondence between the trial judge and the Bureau of the Census, as a result of which the 1960 Census was amended to show a population of 9671 in Ward Three. It further appears from a letter of March 18, 1966, directed to the judge from the Bureau of the Census, that there were 6154 persons enumerated who appear to be patients of East Louisiana State Plospital. A Grand Jury report in the record shows the population of the hospital to have been 3380 as of November 30, 1965. Another such report, rendered on December 4, 1963, shows the population of the hospital to have been 3582 at that time. There is no evidence other than the census itself relating to the patient population of the hospital in 1960. If the census figures are accepted, the population of Ward Three as of April 1, 1960, leaving out the patients, would be less than 5000.
Relator’s position in this case is very simply stated. He contends that the inmates of the hospital should not be included in the population of the Third Ward for political purposes. Respondents, on the other hand, contend that the law requires that they be included.
R.S. 33:1223 provides as follows:
“In each parish having a population of less than fifty thousand inhabitants, there shall be appointed in addition to the police juror to which the ward is entitled, an additional police juror for each five thousand inhabitants which the ward contains, said appointment to be based upon the last preceding U. S. census or upon an official census authorized by the governing authority of the parish; also one additional police juror for each additional five thousand inhabitants or part thereof in excess of two thousand five hundred inhabitants. Such additional police jurors shall be appointed by the governor, shall be residents of the ward from which they are appointed and shall serve until the next election in which police jurors are elected, in which election their successors shall be elected.”
Respondents contend that the word inhabitant as used by the above statute, and as *181 used in the United States Census, have the same meaning, and that, had the Legislature intended for some other standard to apply it would have specifically so stated.
Relator, on the other hand, contends that inhabitant does not mean the same thing for political purposes as it does for census purposes.
As defined in Webster’s New International Dictionary, Second Edition, an inhabitant is “one who dwells or resides permanently in a place, as distinguished from a transient lodger or visitor.”
In Black’s Law Dictionary, an inhabitant is “one who resides actually and permanently in a given place, and has his domicile there.”
Our Supreme Court, in Succession of Givanovich, SO La.Ann. 625, 24 So. 679 (1897) adopted the Webster definition verbatim and added the following remarks :
“The words ‘resident’ and ‘inhabitant’ are not synonymous, the latter implying a more fixed and permanent abode than the former, and frequently imparts many privileges and duties to which a nonresident could not lay claim or be subject. Abb. Law Diet. The word ‘inhabitant’ imports citizenship and municipal obligations.
The standards applied by the Bureau of the Census are set forth in the Final Report of the United States Census for Louisiana, 1960, which is in evidence, and are as follows :
“In accordance with census practice dating back to 1790, each person enumerated in the 1960 Census was counted as an inhabitant of his usual place of residence or usual place of abode, which is generally construed to mean the place where he lives and sleeps most of the time. The place is not necessarily the same as his legal residence, voting residence, or domicile; however, in the vast majority of cases, the use of these different bases of classification would produce substantially the same statistics, although there may be appreciable differences for a few areas.
“In the application of this rule, persons were not always counted as residents of the places in which they happened to be found by the census enumerators. Persons in the larger hotels, motels, and similar places where guests usually pay for quarters were enumerated on the night of March 31, and those whose usual place of residence was elsewhere were allocated to their homes. In addition, information on persons away from their usual place of residence was obtained from other members of their families, landladies, etc. If an entire family was expected to be away during the whole period of the enumeration, information on it was obtained from neighbors. A matching process was used to eliminate duplicate reports for a person who reported for himself while away from his usual residence, and who was also reported at his usual residence by someone else.
“Persons in the Armed Forces quartered on military installations were enumerated as residents of the States, counties, and minor civil divisions in which their installations were located. Members of their families were enumerated where they actually resided. As in 1950, college students were considered residents of the communities in which they were residing while attending college. The crews of the vessels of the U. S. Navy and American Merchant Marine in harbors of the United States were' counted as part of the population of the ports in which their vessels were berthed on April 1, 1960. Inmates of institutions, who ordinarily live there for long periods of time, were counted as inhabitants of the place in which the institution was located; whereas patients in general hospitals, who ordinarily remain for short periods of time, were counted at, or allocated to, their homes. Persons without a usual place of residence were counted where they were enumerated.
*182 “Americans who were overseas for an extended period (in the Armed Forces, working at civilian jobs, studying in foreign universities, etc.) are not included in the population of any of the States or the District of Columbia. On the other hand, persons temporarily abroad on vacations, business trips, and the like, were enumerated at their usual residences on the basis of information received from members of their families or from neighbors.”
Obviously although the greater part of the population counted Under the census regulations would be “inhabitants” under the Supreme Court definition of the word, there will be a number of persons enumerated who would not be considered as such under our law. In most cases, these persons would not be statistically significant.
It is equally obvious that the United States Census is the best, if not the only, evidence of the population of any subdivision. However the rules set up by the Bureau of the Census for the inclusion or exclusion of persons from enumeration in any particular district are purely arbitrary. It is also clear that the Bureau’s rules are designed more to insure the accuracy of total population count rather than to enumerate each person in the geographical or political area wherein he customarily resides and has his principal residence or habitation.
The difference in the population of the Third Ward as shown by the above referred to “Final Report” and the certificate of April 8, 1966, which was obtained by the district judge, resulted from an administrative decision as to the proper place for enumeration of the patients and the standards applied could be changed again by an internal decision made by the Bureau of the Census.
It also appears from the Final Report that the enumeration districts used in making the census do not always coincide with the political boundaries of the governmental subdivisions. For instance, in East Feli-ciana Parish, the Report shows that parts of Wards 1, 2, and 4 were annexed to Ward 3 part of Ward 3 was annexed to Wards 1 and 2 and part of Ward 7 was annexed to Ward 5.
Further R.S. 33:1223 does not require that the census be adopted in its entirety for the purpose of determining the population, but that such determination be “based upon” the census.
As defined in Webster’s New International Dictionary, Second Edition, the “base” of a thing is its main or chief ingredient, its fundamental element or constituent. The verb base means “to form, make or serve as a base for.”
Black’s Law Dictionary says that “based upon” means “an initial or starting point for calculation.”
Obviously, the Legislature did not intend the blind adoption of the census in determining population for political purposes, but rather that it be used as a basis for such determination.
We conclude that the word “inhabitant” as used in the United States Census does not have the same meaning as that intended by Louisiana law, and that it was not intended that institutional populations be included in local population for the purpose of determining political representation.
However, we are unable to determine from the record how many of the inmates of East Louisiana State Hospital must be excluded from the census count in determining the political population of Ward Three. Some of the inmates may very well have been inhabitants of Ward Three because of having been inhabitants thereof prior to their committal.
This case will therefore be remanded to the district court for further trial, in order to determine the number of inmates in East Louisiana State Hospital as of April 1, 1960, and to compare the roster of patients-in the hospital at that time with the names of those enumerated as such by the United States Census, to receive such other evi *183 •dence as may be necessary to determine the •political population of Ward Three of East Feliciana Parish, and for final determination of this case on the merits. All costs ■of this appeal will be borne by appellees.
Reversed and remanded.